In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 21-3303

T. S., *et al.*,

*Plaintiffs-Appellees*,

*v.*

COUNTY OF COOK, ILLINOIS and
LEONARD DIXON,

*Defendants-Appellants*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-08303 — **Rebecca R. Pallmeyer**, *Chief Judge*.

_____

ARGUED NOVEMBER 1, 2022 — DECIDED MAY 15, 2023

_____

Before ROVNER, BRENNAN, and SCUDDER, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Twentieth Century Fox Television filmed scenes for the fictional television series *Empire* at the Cook County Juvenile Temporary Detention Center in 2015. The Center changed its operations to accommodate filming. Those changes resulted in this case.

In this interlocutory appeal, we consider whether the Center's superintendent, Leonard Dixon, is immune from suit under the Illinois State Lawsuit Immunity Act, 745 ILL. COMP. STAT. 5/1. Because the alleged wrongful conduct arose from decisions Dixon made within the scope of his authority as superintendent, he is entitled to state sovereign immunity. We therefore reverse the district court's denial of summary judgment and dismiss this case.

# I

## A

In 2015, the Juvenile Temporary Detention Center housed over 300 youth awaiting trial or other court proceedings. That summer, a Twentieth Century Fox Television location scout contacted Superintendent Dixon about filming scenes at the facility for the fictional television series *Empire.* Dixon agreed, believing it "would be good for the kids" and create "energy in the facility." Fox TV could use the Center's outdoor yard, visitation room, medical office, and certain living spaces to film for five days in June 2015. In exchange, Fox TV would pay a daily lease fee, reimburse any costs incurred, and work with the Center's administration to avoid disrupting its normal functions. With permission, Fox TV returned to film retakes for four days in July 2015 and three days in August 2015.

The Center made several adjustments to its daily operations during the *Empire* filming. Detainees live in housing units known as "pods," each containing 16 or 18 single rooms that open into an enclosed common area. For safety reasons, the Center maintains a policy of limiting the functional capacity of each pod to 12 or 14 detainees. So that Fox TV could use two pods for filming and storage, during filming days several

other pods housed more detainees than the policy suggested. As for daily activities, the detainees in some pods exercised in the facility's indoor gyms or in pod common areas instead of the outdoor yard. School was in session for three days during the July filming period, and classes took place in the pods instead of the classrooms. The Center also postponed or cancelled some extra-curricular activities and held visitation hours in a slightly smaller room.

The Chief Judge of Cook County has operational and administrative control over the Center under the County Shelter Care and Detention Home Act, 55 ILL. COMP. STAT. 75/1 *et seq*. Under the Act, the Chief Judge appointed Dixon to serve as the Center's superintendent. 55 ILL. COMP. STAT. 75/3(b). The parties stipulated that Dixon had "final decision-making authority" on behalf of the Chief Judge "regarding whether to permit the staging and filming of scenes for *Empire*" and "whether and how the [Center's] operations would be altered in order to accommodate" filming.

**B**

T.S., Q.B., and H.C.,[1] detainees at the Center during the *Empire* filming, filed a proposed class action lawsuit against Dixon (in his personal capacity), the Chief Judge (in his official capacity), Cook County, Fox TV, and other Fox entities. The detainees brought several federal and state law claims based on allegations that restrictions at the Center were "more severe" during filming days than those "in many adult jails." The district court resolved the defendants' motions for summary judgment in two orders. It first granted summary

---

[1] After the district court denied the plaintiffs' first motion for class certification, the plaintiffs added H.C. to their complaint.

judgment to the Chief Judge because, in overseeing the Center, the Chief Judge acted as a state official and was therefore immune from suit under the Eleventh Amendment. Months later, it granted summary judgement in favor of the Fox defendants on all claims.

In that same order, the district court addressed the claims against Dixon and Cook County. The plaintiffs, in a claim brought under 42 U.S.C. § 1983, argued that the confinement conditions at the Center amounted to "punishment" in violation of the Fourteenth Amendment Due Process Clause. The district court granted Dixon summary judgment on qualified immunity grounds because the plaintiffs had not shown "a clearly established right to be free of the arguably modest disruptions" they experienced.

As to the state law issues,[2] the district court granted Dixon and Cook County summary judgment on the intentional infliction of emotional distress claim but denied it as to the breach of fiduciary duty claim. In a matter of first impression, the district court decided that Dixon acted as the detainees' guardian and thus had a fiduciary duty to "protect [them] from harm." A jury could, in the district court's view, find that Dixon breached that duty by failing to protect the detainees' "safety and well-being" during filming.

In so holding, the district court rejected Dixon's sovereign immunity defense. Dixon had argued that, as a state

---

[2] After the district court dismissed the Fourteenth Amendment due process claim, only state law claims remained. But the district court exercised its discretion to retain supplemental jurisdiction over the claims due to "this case's lengthy procedural history and the extensive judicial resources expended thus far."

employee, he was immune from suit under the Illinois State Lawsuit Immunity Act, 745 ILL. COMP. STAT. 5/1. The district court acknowledged that a state's sovereign immunity can extend to state employees sued in their individual capacity. But it also highlighted a sovereign immunity exception recognized by this court in *Murphy v. Smith*, 844 F.3d 653 (7th Cir. 2016). Under this officer suit exception, a defendant is not entitled to sovereign immunity where a "plaintiff alleges that state officials or employees violated statutory or constitutional law." *Murphy*, 844 F.3d at 660 (internal quotations omitted).

The officer suit exception identified in *Murphy* played a major role in the district court's analysis. Dixon received qualified immunity on the Fourteenth Amendment conditions-of-confinement claim and thus could not be held liable for a constitutional violation. But the district court reasoned that Dixon's qualified immunity did not "negate the possible presence of an underlying constitutional violation," meaning the officer suit exception could still apply. And since the constitutional and state law claims were based on the same conduct, Dixon could not yet avail himself of sovereign immunity. So, the breach of fiduciary duty claim could proceed to trial. Admittedly, this holding created an unusual dynamic. Dixon would only be entitled to sovereign immunity on the state law breach of fiduciary duty claim if he proved at trial that he did not violate the detainees' constitutional rights.

Dixon and Cook County moved to certify the district court's summary judgment order for interlocutory appeal under 28 U.S.C. § 1292(b). In support of their motion, they pointed to the Illinois Supreme Court's statement in *Parmar v. Madigan* that "a complaint seeking damages … does not fall

within the officer suit exception to sovereign immunity." 106 N.E.3d 1004, 1010 (Ill. 2018) (citing *Leetaru v. Bd. of Trs. of Univ. of Ill.*, 32 N.E.3d 583, 598 (Ill. 2015)). Since the detainees here seek damages, Dixon and Cook County argued the officer suit exception did not apply.

The district court certified the following question:

> [W]hether, under Illinois law, the officer suit exception to sovereign immunity applies only if a plaintiff seeks to enjoin a continuing violation of statutory or constitutional law.

This court accepted Dixon and Cook County's petition for interlocutory appeal.[3] "An appeal under § 1292(b) brings up the whole certified order." *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 974 (7th Cir. 2021). As such, we "may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'" *Id.* (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). We review de novo the district court's grant of summary judgment. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 852 (7th Cir. 2023).

## II

Under the *Erie* doctrine, "state rules of immunity govern actions in federal court alleging violations of state law."

---

[3] In June 2021, the district court also granted in part and denied in part the plaintiffs' motion for class certification. Concurrently with their petition for interlocutory appeal under 28 U.S.C. § 1292(b), Dixon and Cook County filed a petition for interlocutory appeal of the class certification under Federal Rule of Civil Procedure 23(f). We stayed consideration of the Rule 23(f) petition pending our resolution of this appeal.

*Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). An Illinois statute provides that "the State of Illinois shall not be made a defendant or party in any court." 745 ILL. COMP. STAT. 5/1. Whether that statute covers state law claims like the plaintiffs' breach of fiduciary claim against Dixon "is a matter of state law." *Murphy*, 844 F.3d at 658. "Our role is to decide questions of state law as we predict the state supreme court would decide them." *Id.*

## A

We first address whether Dixon, in his superintendent role, is a state actor. Our analysis begins with the Cook County Chief Judge, who appointed Dixon.

In 2007, the Illinois General Assembly amended the Detention Home Act, 55 ILL. COMP. STAT. 75/1, "to move management of the Center from the domain of the County's political branches to the domain of the Circuit Court of Cook County, in whose Chief Judge state law now vests authority." *Doe v. Cook Cnty., Ill.*, 798 F.3d 558, 560 (7th Cir. 2015). The Chief Judge now has the power to appoint the Center's superintendent and "all other necessary personnel" to "serve at [his] pleasure." 55 ILL. COMP. STAT. 75/3(a), (b). Before the amendment, the chief judges in every other Illinois county administered juvenile detention centers. The amendment brought Cook County in line with that practice. The amendment also gave the Chief Judge "administrative control over [the Center's] budget … subject to the approval" of the county board. 55 ILL. COMP. STAT. 75/3(c). This additional empowerment, unique to Cook County, gives the Chief Judge more financial control over the Center. The Chief Judge's administrative

duties over the Center "arise from his State employment." *Mullins v. Evans*, 187 N.E.3d 178, 201 (Ill. App. Ct. 2021).

Since the Chief Judge acts as a state official in administering the Center, we next address the relationship between the Chief Judge and Dixon. As stated, the Chief Judge appointed Dixon to serve as the Center's superintendent, and Dixon serves at his pleasure. Relevant here, the parties stipulated that Dixon had final decision-making authority on behalf of the Chief Judge as to whether to allow and how to accommodate the *Empire* filming. Therefore, when making these decisions, Dixon was acting with the authority granted him by the Chief Judge. Because he acted under the delegated authority of the Chief Judge—a state officer—Dixon is also a state actor for purposes of any *Empire*-related decisions.

Resisting this conclusion, the plaintiffs argue that Dixon is a Cook County employee, rather than a state employee, because Cook County pays his salary. Although the county does pay Dixon's salary, 55 ILL. COMP. STAT. 75/3(a), Illinois reimburses the county for that expense. Under state law, the Supreme Court of Illinois's Division of Probate Services must "reimburse the county or counties" for certain probation services, including "100% of the salary for all secure detention personnel." 730 ILL. COMP. STAT. 110/15(4)(c). Because the state ultimately reimburses the county for Dixon's salary, this argument does not persuade.

**B**

Dixon is a state actor, so we consider whether he is shielded from suit by state sovereign immunity. Before 1970, Illinois addressed sovereign immunity in its state constitution. The 1870 Illinois Constitution provided that "[t]he State

of Illinois shall never be made defendant in any court of law or equity." Ill. Const. of 1870, art. IV, § 26. One-hundred years later, the 1970 Illinois Constitution abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const., art. XIII, § 4. Acting under this provision, the General Assembly restored sovereign immunity through the State Lawsuit Immunity Act, which provides that "the State of Illinois shall not be made a defendant or party in any court." 745 Ill. Comp. Stat. 5/1. Instead, the Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois." 705 Ill. Comp. Stat. 505/8(a).

The prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978). Therefore, the "formal identification of the parties as they appear in the record is not dispositive." *Leetaru*, 32 N.E.3d at 595. Instead, "[w]hether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends … on the issues involved and the relief sought." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990). "[S]ubstance takes precedence over form." *Leetaru*, 32 N.E.3d at 595.

The plaintiffs bring a breach of fiduciary claim for damages against Dixon in his personal capacity. Since the formal identification of the parties is not dispositive, we must decide whether the plaintiffs' claim is "nominally one against" Dixon and instead one "against the State." *Sass*, 381 N.E.2d at 977.

An action brought against a state employee is considered one against the state when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Healy*, 549 N.E.2d at 1247 (quoting *Robb v. Sutton*, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986)). And if an action brought against a state official in his or her personal capacity "could operate to control the actions of the State or subject it to liability," it is also considered an action against the state. *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992).

*Scope of Authority*. Whether "an agent or employee of the State acted beyond the scope of his authority," *Healy*, 549 N.E.2d at 1247, depends on whether "the employee intended to perform some function within the scope of his or her authority when committing the legal wrong," *Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. Ct. 2005). As stated above, Dixon had state authority to accommodate the *Empire* filming. So, when making operational decisions surrounding *Empire*, Dixon "intended to perform some function within the scope of his … authority" as the Center's superintendent. *Id.* And nothing in the record indicates that Dixon acted outside of the scope of his authority.

That Dixon allegedly caused the plaintiff detainees harm in accommodating the *Empire* filming does not mean that he acted outside the scope of his authority. "[S]overeign immunity presupposes the possibility of a legal wrong by a state employee." *Id.* And "legal wrongs are, *per se,* unauthorized, [so] the relevant question cannot be whether the employee had authority to commit the legal wrong. Instead, the question is whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *Id.* In making operational decisions to accommodate the *Empire* filming, we conclude that Dixon intended to act within the scope of his authority as superintendent.

*Source of Duty.* Next, we consider whether the "duty alleged to have been breached was not owed to the public generally independent of the fact of State employment." *Healy*, 549 N.E.2d at 1247. "[T]he proper inquiry is to analyze the source of the duty the employee is charged with breaching in committing the allegedly [wrongful] act." *Currie*, 592 N.E.2d at 980. Where the alleged wrongful conduct "arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment," sovereign immunity bars the action in circuit court. *Id.* But "where the employee is charged with breaching a duty imposed on him independently of his state employment, sovereign immunity will not attach." *Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004).

The Illinois Supreme Court has recognized a few instances in which a state employee's duty arose independently of state employment. Sovereign immunity will not bar a claim of a state employee's negligent driving. *Currie*, 592 N.E.2d at 981 (citing *Bartholomew v. Crockett*, 475 N.E.2d 1035 (Ill. App. Ct. 1985)). In *Currie*, a state trooper caused an accident while

performing a "routine operation of a motor vehicle on a public street," breaching a duty that arose from the trooper's status as an automobile driver. *Id.* at 982. In the same vein, doctors working for state government are not shielded by sovereign immunity for violating a duty "inherent in the doctor-patient relationship." *Jinkins*, 807 N.E.2d at 421. Such a duty exists regardless of employment by the state. The same goes for violations of the Illinois Criminal Code. *Fritz v. Johnston*, 807 N.E.2d 461, 469 (Ill. 2004). All citizens—regardless of their status as state employees—must abide by the state's criminal statutes. *Id.*

Here, the source of any duty Dixon owed to the detainees stems solely from his role as superintendent. The plaintiffs argue to the contrary. They claim Dixon owed them a duty as their caretaker, and that this caretaker duty exists independently of Dixon's employment. We disagree. Even assuming Dixon acts as the detainees' caretaker, this duty arises only from his role as superintendent. Dixon would owe no duty to the detainees outside of the detention-center context. And the detainees' allegations make clear that their claim against Dixon stems from his failure in the performance of his duties as superintendent. So, we have no doubt that the source of any duty Dixon owed the detainees comes from his state employment.

*Official Functions*. Third, we ask whether the breach involved matters "ordinarily within … the normal and official functions" of the superintendent of a juvenile facility. *Healy*, 549 N.E.2d at 1247. This third criterion "overlap[s] to some extent" with the first. *Jackson*, 831 N.E.2d at 1164. Allocating facility space, scheduling recreational and extra-curricular programming, and managing the day-to-day operations of

the Center remained within Dixon's normal and official functions. The plaintiffs argue that Dixon acted "for reasons other than what [he] perceived to be the best interests" of his employer when deciding to allow the *Empire* filming. However, Dixon's motives do not factor into whether he acted within his normal functions.

Under our analysis of the three *Healy* factors, Dixon acted both within the scope of his authority and within his normal and official functions as superintendent in making decisions related to the *Empire* filming, and the source of any duty owed to the detainees stems from his state employment. So, we conclude that the plaintiffs' breach of fiduciary claim against Dixon is a claim against the State of Illinois and therefore barred by its sovereign immunity statute.

C

For a few reasons, the district court got off track in its analysis of Illinois state sovereign immunity. Admittedly, the State Lawsuit Immunity Act "has generated a considerable body of case law that has not always been consistent in defining those instances where the State is made a defendant in circuit court." *Leetaru*, 32 N.E.3d at 602 (Burke, J., dissenting).

Generally, two lines of cases dealing with suits against state employees have emerged. The first line of cases addresses whether a suit brought against a state employee in his personal capacity is an action brought against the state. In those cases, Illinois courts have applied the three *Healy* factors to decide whether such a claim is "nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself." *Sass*, 381 N.E.2d at 977. Because the plaintiffs brought the breach of fiduciary duty claim against

Dixon in his personal capacity, the district court should have applied the three *Healy* factors.

A second line of cases deals with suits brought against state employees in their official capacities. An official capacity claim against a state official is "not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). The "official acts of State officials are in effect acts of the State." *Sass*, 381 N.E.2d at 977. But if a plaintiff "seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectible legal interests," then "[s]uch a suit does not contravene the immunity prohibition." *Bio-Med. Lab'ys, Inc. v. Trainor*, 370 N.E.2d 223, 227 (Ill. 1977); *Ellis v. Bd. of Governors of State Colls. & Univs.*, 466 N.E.2d 202, 206–07 (Ill. 1984). Thus, the officer suit exception applies when a plaintiff seeks to enjoin state officials from ongoing statutory or constitutional violations.

The officer suit exception "is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Leetaru*, 32 N.E.3d at 596. In these instances, a "suit may therefore be maintained against the officer without running afoul of sovereign immunity principles." *Id.* Illinois state courts "have repeatedly reaffirmed the right of the plaintiffs to seek injunctive relief in circuit court to prevent unauthorized or unconstitutional conduct." *Id.* But the officer suit exception does not apply in a damages suit. In *Parmar*, the Illinois Supreme Court affirmed that "a complaint seeking damages for a past wrong does not fall within the officer suit exception to sovereign immunity." 106 N.E.3d at 1010. The

detainees do not seek to enjoin Dixon from any ongoing violations of statutory or constitutional law. The district court thus erred in applying the officer suit exception to Dixon's case, a personal capacity suit seeking damages.

In discussing the officer suit exception, the district court relied on this court's decision in *Murphy*. In that case, a prisoner brought a personal capacity suit against prison officers. *Murphy*, 844 F.3d at 655. The prisoner sought damages for alleged violations of state and federal law. *Id. Murphy* cited *Leetaru* for the proposition that: "[t]he Illinois doctrine of sovereign immunity does not apply to state-law claims against a state official or employee who has violated statutory or constitutional law." *Id.* While that is an accurate statement of the officer suit exception, the court in *Murphy* did not discuss the injunctive nature of the relief sought in *Leetaru* or the fact that *Leetaru* involved an official capacity suit. In *Murphy* the court held that, because the defendant had acted "in violation of statutory or constitutional law," sovereign immunity did not bar the plaintiff's claims. *Id.* at 660. Although the court acknowledged the three *Healy* factors govern whether a claim against a state official "is a claim against the state," it did not apply them in its analysis. *Id.* at 658.

Due to its reliance on *Murphy*, the district court did not consider the nature of the relief sought by the plaintiffs or whether the plaintiffs sued Dixon in his personal or official capacity. As stated previously, the *Healy* factors should have been applied in this personal capacity suit for damages.

### III

Dixon is entitled to sovereign immunity under the *Healy* factors, so we REVERSE the district court's denial of summary

16                                                          No. 21-3303

judgment and REMAND with instructions to DISMISS the remaining claim.